IN THE UNITED STATES DISTRICT COURT
FORTHE NORTHERN DISTRICT OF WEST VIRGINIA
Clarksburg

**OSCAR AARON WATKINS,**

    Petitioner,

v.                              Crim. Action No.   1:18-CR-54-2
                              Civil Action No.    1:21-CV-36
                              Judge Kleeh

**USA,**

    Respondent.

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

On March 15, 2021, Oscar Aaron Watkins ("petitioner"), proceeding *pro se*, filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Civil Action Number 1:21-CV-36 Doc. 1; Criminal Action Number 1:18-CR-54-2 Doc. 219].[1]  Because the petition was not on the court-approved form, the Court issued a Notice of Deficient Pleading, and petitioner re-filed his petition on the court form on April 5, 2021.  [Doc. 223].  On May 11, 2021, the Court directed respondent to file an answer.  [Doc. 226].  Respondent filed a response on June 24, 2021, in which it argues that the petition should be denied and dismissed.  [Doc. 228].  This matter is currently pending before the undersigned for a Report and Recommendation pursuant to LR PL P 2.  For the reasons stated below, the undersigned recommends that the District Judge deny and dismiss the petitioner's motion.

---

[1] From this point forward, all document numbers refer to petitioner's criminal action.

1

## II. PROCEDURAL HISTORY

**A. Conviction and Sentence**

On November 6, 2018, petitioner was charged with conspiracy to distribute methamphetamine, aiding and abetting possession with intent to distribute methamphetamine, aiding and abetting with intent to distribute heroin, aiding and abetting possession with intent to distribute cocaine base, distribution of methamphetamine, and unlawful possession of a firearm. *See* [Doc. 1]. On January 4, 2019, petitioner filed a Motion to Suppress. [Doc. 58]. The Motion challenged a detention and search of defendant and any evidence seized as a result of subsequent warrants. As summarized by the Fourth Circuit,

> On October []9[2], 2018, Officer Zane Breakiron with the Morgantown Police Department was on an overnight patrol in Morgantown, West Virginia. Officer Breakiron was assigned to "Zone 10" which includes the Euro-Suites Hotel. J.A. 115–17.1 Around 1:30 a.m., Officer Breakiron conducted a self-initiated "security check" of the Euro-Suites parking lot. . . . Officer Breakiron routinely conducted security checks of the hotel's parking lot at the request of hotel employees and as a result of prior criminal activity at the hotel. Specifically, Officer Breakiron reported that hotel employees had reported finding needles in the hotel parking lot and believed the parking lot was being used for drug deals. Further, Officer Breakiron

---

[2] The Fourth Circuit opinion contained a typographical error listing the date of the search as October 19, 2018.

reported that there had been numerous calls for service to the hotel parking lot for various crimes, including a robbery, prostitution, and drug activity.

While conducting his security check, Officer Breakiron observed a truck parked in the rear parking lot of the hotel. The truck's rear brake lights were on and a person, later determined to be [co-defendant] Knicely, was sitting in the driver's seat. Officer Breakiron then observed another individual, later determined to be Watkins, walk from the hotel and sit in the front passenger seat of the truck. Officer Breakiron parked in a nearby parking lot, turned off his headlights, and observed the truck for a few minutes. During that time, Officer Breakiron observed the truck's interior light go on and off multiple times. Because he suspected the individuals in the truck may be using drugs, Officer Breakiron decided to further investigate.

Officer Breakiron drove his "fully marked" police cruiser into the hotel parking lot and stopped in the driving lane approximately three parking spaces back from the truck. . . . He did not turn his emergency lights on but did leave his headlights running. Officer Breakiron exited his vehicle and began walking toward the truck. As he approached, Officer Breakiron immediately smelled the odor of marijuana coming from the truck. Once he reached the truck, Officer Breakiron identified himself as an officer and asked the occupants for identification.

He identified the two occupants as Watkins and Knicely. Because he smelled marijuana, Officer Breakiron requested a K-9 officer respond to the

3

scene. Shortly thereafter, Officer Helms, the K-9 officer, arrived. Additionally, First Sergeant Jason Ammons heard the radio call and responded. Both arriving officers parked their police cruisers in the driving lane of the hotel parking lot next to Officer Breakiron's cruiser.

Officer Breakiron then asked Watkins and Knicely to step out of the truck and patted them down for weapons. After the K-9 gave a positive response for the presence of illegal drugs, the officers conducted a full search of the truck and read Watkins and Knicely their Miranda rights. As a result of the vehicle search, the officers recovered methamphetamine, Xanax, crack cocaine, marijuana, a grinder, a white powder substance, and cell phones. Watkins and Knicely were arrested and searched. In the search, the officers found a hotel key and over $7,000 on Watkins and just over $200 on Knicely.

After determining that Watkins had rented a room at the hotel, Officer Breakiron contacted officers with the drug task force who obtained a search warrant for the hotel room based on the information provided by Officer Breakiron as to the results of the search of the truck. When officers executed the search warrant for the hotel room later that night, they found Trapp in the room. The search yielded more methamphetamine, cocaine base, heroine, a scale, cash, and four firearms. Trapp was also arrested.

**United States v. Watkins**, 816 F. App'x 821, 822–23 (4th Cir. 2020), *cert. denied sub nom.* **Knicely v. United States**, 141 S. Ct. 1282, 209 L. Ed. 2d 16 (2021) (citations omitted).  Defendant's motion argued that the police officer did not have reasonable

suspicion that criminal activity was afoot and that the search of petitioner and the subsequent search warrants obtained were in violation of petitioner's Fourth Amendment rights. On February 19, 2019, the Court denied defendant's Motion. [Doc. 118].

On February 27, 2019, petitioner appeared before the undersigned for a plea hearing at which he entered a plea of guilty to conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) pursuant to a conditional plea agreement. In the conditional plea agreement, petitioner reserved the right to appeal any order denying his motion to suppress the physical evidence seized on October 9, 2018. [Doc. 135 at 1]. On May 30, 2019, petitioner was sentenced to a term of 156 months imprisonment.

**B. Appeal**

On June 11, 2019, petitioner filed a Notice of Appeal. On appeal, petitioner challenged the court's denial of the motion to suppress. The Fourth Circuit affirmed the denial of the Motion. *Watkins*, 816 F. App'x 821.

**C. Federal Habeas Corpus**

On March 15, 2021, petitioner filed the instant petition. As set forth above, petitioner re-filed his petition on the court form on April 5, 2021, and the respondent filed a response on June 24, 2021. In his petition, petitioner raises four grounds for relief: first, that he was illegally seized while sitting in a truck that did not belong to him. Second, that there were no drugs found on him while sitting in the truck. Third, that the officer acted as if petitioner owned the truck and that he should have been let go at that time. And fourth, that the seizure was illegal. Essentially, all of his grounds seek to relitigate the suppression issue. Discussing his direct appeal of this argument, petitioner states that

5

his counsel was ineffective, that "Belinda A Hayne was my counsel she did all the talking when it came to this case I told her that I was just siting (sic) and talking with Mr. Knicely" and that his counsel "did not let me talk she was ineffective assistance of counsel she told me to plead guilty because of my record." [Doc. 223 at 6, 7, & 10]. In its response, the Government argues that petitioner's appellate counsel's performance was neither deficient nor prejudicial and that petitioner cannot relitigate issues previously decided in the original proceeding and on appeal. [Doc. 228 at 8–9].

### III.  STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a prisoner may file a motion challenging the sentence imposed by a federal court, "if (1) the sentence violates the Constitution or laws of the United States; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum; or (4) the sentence 'is otherwise subject to collateral attack.'" **Beyle v. United States**, 269 F. Supp. 3d 716, 725 (E.D. Va. 2017) (quoting 28 U.S.C. § 2255(a)). "A sentence is 'otherwise subject to collateral attack,' if a petitioner shows that the proceedings suffered from 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id*. (quoting **United States v. Addonizio**, 442 U.S. 178, 185 (1979)). "A petitioner bears the burden of proving one of those grounds by a preponderance of the evidence." *Id*. (citing **Miller v. United States**, 261 F.2d 546, 547 (4th Cir. 1958)). "If he satisfies that burden, the court may vacate, set aside, or correct the sentence." *Id*. (citing 28 U.S.C. § 2255(b)). "However, if the motion, when viewed against the record, shows that the petitioner is entitled to no relief, the court may summarily deny the motion." *Id*. (citing **Raines v. United States**, 423 F.2d 526, 529 (4th Cir. 1970)).

6

Finally, this Court notes that pro se allegations are held to a less stringent standard than those drafted by lawyers and must be liberally construed.  **Haines v. Kerner**, 404 U.S. 519, 520 (1972); **Hudspeth v. Figgins**, 584 F.2d 1345, 1347 (4th Cir. 1978).

## IV.   ANALYSIS

### A.   Petitioner should not be permitted to relitigate the motion to suppress.

Petitioner's listed grounds all seek to raise the same argument originally brought as part of his motion to suppress: that the October 9, 2018 search was unlawful and evidence resulting from it should have been inadmissible.  As set forth above, this issue was thoroughly analyzed by both this Court and the Fourth Circuit.  A district court has the discretion to refuse to reach the merits of a constitutional claim that has already been raised and resolved at trial and on direct review.  "Where a trial or appellate court has determined the federal prisoner's claim, discretion may in a proper case be exercised against the grant of a s 2255 hearing."  **Kaufman v. United States**, 394 U.S. 217, n. 8 (1969).  "[A]t least as a general rule, federal prisoners may not use a motion under 28 U.S.C. § 2255 to relitigate a claim that was previously rejected on direct appeal."  **Foster v. Chatman**, 578 U.S. 488, 519 (2016) (Alito, J., concurring).  "In other words, a convicted defendant may not relitigate claims in a § 2255 motion that were previously decided on their merits, unless the factual or legal circumstance of the case has changed significantly."  **Harris v. United States**, No. 2:12-CV-73, 2013 WL 2455983, at *10 (N.D. W.Va. June 6, 2013) (Bailey, J.) (citations omitted).  Here, petitioner merely seeks to relitigate an issue previously decided on direct appeal and his claims should be denied.

**B.   To the extent petitioner is arguing his counsel was ineffective, he is unable to support this claim.**

Discussing his direct appeal of his claims, petitioner asserts that his counsel was ineffective both in advising him to plead guilty and in representing him on appeal. Criminal defendants have a Sixth Amendment right to effective legal assistance. ***Strickland v. Washington***, 466 U.S. 668, 687 (1984). To establish that counsel's assistance was not reasonably effective, a defendant must satisfy a two-prong analysis: first, he must show both that counsel's performance fell below an objective standard of reasonableness and, second, that he was prejudiced by counsel's alleged deficient performance. ***Strickland***, 466 U.S. at 669.

Here, petitioner has done little to identify what actions or inaction by his counsel he contends were ineffective. The only example he gives is that his counsel "told me to plead guilty because of my record." [Doc. 223 at 10]. It is clearly not ineffective assistance of counsel to advise a defendant on whether or not to take a plea bargain, and petitioner has offered no explanation why advising him to take a plea in this case fell below an objective standard of reasonableness. To the extent petitioner is attempting to raise ineffective assistance of counsel as a basis for his habeas petition, he is unable to satisfy either prong of ***Strickland*** and this claim should be denied.

### V.   RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [**Civil Action Number 1:21-CV-36 Doc. 1; Criminal Action Number 1:18-CR-54-2 Doc. 219**] be **DENIED** and **DISMISSED with prejudice**.

Within fourteen days after service of this Report and Recommendation, the

petitioner may file with the Clerk of this Court**, specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection**. A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to send a copy of this Report and Recommendation to the petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet. In addition, because this Report and Recommendation completes the referral from the District Court, the Clerk is **DIRECTED** to terminate the Magistrate Judge association with this case.

**DATED**:  June 13, 2022.

/s/ *Michael John Aloi*
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE